IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| JESSICA and JESSIE SIEMS, Individually and as next Friends of J.S., a Minor | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No.: 13-0796-CV-W-ODS |
| BUMBO INTERNATIONAL TRUST, f/k/a Jonibach Management Trust and TARGET CORPORATION, | ) ) ) ) | |
| Defendants. | ) | |

## ORDER AND OPINION GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO STRIKE OPINIONS OF DR. JOHN MEYER

Defendants Bumbo International Trust and Target Corporation move to strike the opinions of Dr. John Meyer (Doc. 60). The motion is granted in part and denied in part.

### I. Legal Standard

The district court must make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology can be applied to the facts in issue." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993). In determining the admissibility of expert testimony, the Eighth Circuit uses a three-part test:

> First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. This is the basic rule of relevancy. Second, the proposed witness must be qualified to assist the finder of fact. Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires.

*Lauzon v. Senco Products, Inc.*, 270 F.3d 681, 686 (8th Cir. 2001) (internal quotations and citations omitted).  The third requirement is based on Federal Rule of Evidence 702, which permits expert opinions at trial if: "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the expert has reliably applied the principles and methods to the facts of the case."  Further, in "its attempt to determine whether proffered scientific evidence is scientifically valid, a trial court should ordinarily consider, among other factors, the following: (1) whether the underlying theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether the technique has a known or knowable rate of error; (4) whether the theory or technique is generally accepted in the relevant community." *Jaurequi v. Carter Mfg. Co.,* 173 F.3d 1076, 1082 (8th Cir.1999). "This list of factors is not exclusive, and the trial court is left with great flexibility in adapting its analysis to fit the facts of each case." *Id.*

## II.  Discussion

Dr. John Meyer is a licensed professional engineer, with a doctorate degree in mechanical engineering from the Massachusetts Institute of Technology.  Currently, he works at ITC Experts, Inc., which is "an engineering and scientific consulting firm that specializes in engineering and scientific investigations for accidents, product failures, building and construction deficiencies, intellectual property disputes, and industrial problems."  (Doc. 60-1, Page 4).  Dr. Meyer previously has evaluated ten cases involving Bumbo Baby Seat accidents.  The Court finds that Dr. Meyer is qualified to testify about engineering.

### A.  Opinion that the Seat's Design is Unreasonably Dangerous

Defendants argue that the Court should exclude Dr. Meyer's opinion that the Seat's design is unreasonably dangerous.  Defendants offer several reasons for this position.  First, they contend Dr. Meyer's testimony should be excluded because his only criticism of the Seat is that it lacked a seatbelt.  However, Dr. Meyer's testimony is not just that the Seat could be made safer with the addition of a seatbelt, but that the

2

Seat is not safe *unless* it has a seatbelt.  Moreover, the law permits experts to testify that a lack of a feature makes a product unreasonably dangerous. *Thierfelder v. Virco, Inc.*, 502 F. Supp. 2d 1025, 1031-32 (W.D. Mo. 2007); *Daniels v. Farmers Elev. and Exch. Co. of Monroe City*, No. 2:05-CV-55, 2006 WL 2632207, at *11 (E.D. Mo. Sept. 13, 2006).

Second, Defendants maintain that Dr. Meyer did not perform any testing to support his opinion that the Seat is unreasonably dangerous without a seatbelt.  However, Dr. Meyer *did* perform testing to support his opinion.  Dr. Meyer states that a 10 kg dummy "was placed in a Bumbo seat on a flat surface and the entire assembly was subsequently tilted forwards, backwards, or side-to-side at an increasing angle.  At a lateral title angle of approximately 24°, the dummy fell out of the seat."  (Doc. 60-1, Page 20).  Dr. Meyer continues that these tests, "were repeated in a modified Bumbo babyseat, one that contained a simple seat belt restraint that we added…In this case, a lateral tilt angle of approximately 31° was achieved before the seat and dummy fell over as a unit."  (Doc. 60-1, Page 20).  Based upon this testing and other analysis, Dr. Meyer finds that a seatbelt "would improve the safety of the Bumbo with respect to both escapes and tipovers."  (Doc. 60-1, Page 23). Dr. Meyer also examined Dr. Michael Prange's testing, which evaluated the effect of a seatbelt on the Seat.  In so doing, Dr. Meyer noted that "Dr. Prange concluded the restraint system was effective in preventing a child from exiting the Bumbo seat, that it was appropriately strong and durable, and that use of the restraint does not pose a tipover hazard."  (Doc. 60-1, Page 28). The Court finds that Dr. Meyer's methodology, through his testing and analysis, was sufficiently reliable.

Third, Defendants contend that Dr. Meyer's testimony should be excluded because J.S. was in a Seat that had a feeding tray attached, and Dr. Meyer's analysis did not include this feeding tray.  While Dr. Meyer did not perform safety and engineering tests that included this tray, he states in his report that "the feeding tray…was not designed to be a safety restraint and does not prevent children from escaping the baby seat."  Further, the law does not require "'perfect identity between actual and experimental conditions.  Ordinarily, dissimilarities affect the weight of the evidence, not its admissibility.'"  *Champeau v. Fruehauf Corp.*, 814 F.2d 1271, 1278

3

(8th Cir. 1987) (citing *Randall v. Warnaco, Inc.*, 677 F.2d 1226, 1233-34 (8th Cir. 1982)).

For these reasons, the Court will not exclude Dr. Meyer's testimony that the Seat is unreasonably dangerous without a seatbelt.

### B.  Opinion that Seatbelt would have Prevented J.S.'s Accident

Defendants argue that Dr. Meyer's opinion that a seatbelt would have prevented J.S.'s accident should be excluded. Defendants maintain that Dr. Meyer "did not perform any testing or analysis of the Bumbo Seat with or without a seatbelt." As discussed above, though, Dr. Meyer did test and analyze the Bumbo seat with a seatbelt and without a seatbelt. Again, the Court finds that Dr. Meyer's methodology, through his testing and analysis, was sufficiently reliable.

### C.  Warnings

Defendants also contend that Dr. Meyer should not be permitted to testify about the Seat's warnings, because this testimony is outside of Dr. Meyer's area of expertise and because the testimony is cumulative of Dr. Wogalter's testimony. An expert witness is precluded from testifying outside his area of expertise, but Dr. Meyer notes in his report that warnings are part of the 3-tier effectiveness hierarchy of risk reduction techniques for product design. Consequently, Dr. Meyer's testimony about warnings is admissible to the extent that he testifies about what consumers should be warned about in light of product design. *Theirfelder*, 502 F. Supp. 2d at 1032. To the extent that Dr. Meyer goes beyond this type of testimony and testifies about how warnings are conveyed, that type of testimony is inadmissible.

Finally, Defendants argue that Dr. Meyer's testimony about warnings would be cumulative of Dr. Wogalter's testimony. The Court does not put a limit on the number of witnesses who can testify about a particular issue. Even if the Court did, because Dr. Meyer's testimony is limited to what consumers should be warned of in light of product design and Dr. Wogalter will opine about the conveyance of the warnings, Dr. Meyer's testimony is not cumulative of Dr. Wogalter's testimony.

4

### D. Marketing

Defendants assert that Dr. Meyer should not be permitted to testify about the Seat's marketing, as this type of testimony is outside of Dr. Meyer's area of expertise. The Court agrees with Defendants on this point. Dr. Meyer's area of expertise is engineering, not marketing. Unlike warnings, marketing is not part of the 3-tier effectiveness hierarchy of risk reduction techniques for product design. Plaintiffs argue that Dr. Meyer's testimony about marketing is admissible because it pertains to whether consumer expectations about the Seat were violated. While evidence regarding violations of consumer expectations is admissible, Dr. Meyer, as an engineering expert, is not the witness through which this evidence may be admitted. Consequently, the Court will not permit Dr. Meyer to testify about the Seat's marketing.

### E. Opinions about Consumer Safety

Defendants argue that Dr. Meyer should not be able to testify that "Bumbo has demonstrated a lack of concern for safety." The Court has qualified Dr. Meyer as an expert in engineering. The Court does not find that the opinions expressed in Section C, Parts 1-3 of Dr. Meyer's report are based on his expertise as an engineer. Someone without Dr. Meyer's engineering background could have the ability to draw similar conclusions. Dr. Meyer is not permitted to testify outside of his expertise area and make assertions about how the Bumbo company operated.

However, the Court does find that some of Dr. Meyer's testimony in Part C, Section 4 is admissible. For example, Dr. Meyer may testify that current design and safety standards call "for the inclusion of reasonably foreseeable misuse in the design process." This type of testimony is within Dr. Meyer's engineering expertise. However, Dr. Meyer may not opine as to how this engineering standard does or does not reflect on Bumbo's concern for consumer safety. The Court notes that these are merely examples of what is and is not admissible in Part C, Section 4 of Dr. Meyer's report and is not an exhaustive list.

5

Case 4:13-cv-00796-ODS   Document 82   Filed 10/02/14   Page 5 of 6

### III. Conclusion

For the foregoing reasons, the motion to strike the opinions of Dr. John Meyer is granted in part and denied in part.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: October 2, 2014                UNITED STATES DISTRICT COURT