IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| JESSICA and JESSIE SIEMS, Individually and as next Friends of J.S., a Minor | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No.: 13-0796-CV-W-ODS |
| BUMBO INTERNATIONAL TRUST, f/k/a Jonibach Management Trust and TARGET CORPORATION, | ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER AND OPINION DEFFERING JUDGMENT ON DEFENDANTS' MOTION TO STRIKE OPINIONS OF PLAINTIFFS' MEDICAL EXPERTS PENDING A DAUBERT HEARING

Defendants Bumbo International Trust and Target Corporation move to strike the opinions of Plaintiffs' Medical Experts (Doc. 61). Judgment on the motion is deferred pending a Daubert hearing.

### I. Legal Standard

The district court must make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology can be applied to the facts in issue." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993). In determining the admissibility of expert testimony, the Eighth Circuit uses a three-part test:

> First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. This is the basic rule of relevancy. Second, the proposed witness must be qualified to assist the finder of fact. Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires.

*Lauzon v. Senco Products, Inc.*, 270 F.3d 681, 686 (8th Cir. 2001) (internal quotations and citations omitted). The third requirement is based on Federal Rule of Evidence 702, which permits expert opinions at trial if: "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the expert has reliably applied the principles and methods to the facts of the case." Further, in "its attempt to determine whether proffered scientific evidence is scientifically valid, a trial court should ordinarily consider, among other factors, the following: (1) whether the underlying theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether the technique has a known or knowable rate of error; (4) whether the theory or technique is generally accepted in the relevant community." *Jaurequi v. Carter Mfg. Co.,* 173 F.3d 1076, 1082 (8th Cir.1999). "This list of factors is not exclusive, and the trial court is left with great flexibility in adapting its analysis to fit the facts of each case." *Id.*

## II. <u>Dr. Brian Woodruff</u>

Dr. Brian Woodruff is a pediatric neurologist who is certified by the American Board of Psychiatry and Neurology with Board Certification in Neurology with Special Qualification in Child Neurology. He has over fifteen years of experience as a pediatric neurologist and currently serves as the Chair of Pediatrics Department at St. Joseph Mercy Hospital in Ann Arbor, Michigan. The Court finds that Dr. Woodruff is qualified to testify as an expert in neurology.

### A. <u>Opinion Regarding J.S. Suffering a Mild Traumatic Brain Injury</u>

Defendants assert that Dr. Woodruff's opinion that J.S. suffered a mild traumatic brain injury is unreliable and should be excluded. Defendants' assertion is based on several arguments. First, Defendants point out that Dr. Woodruff never personally examined J.S. While this is true, the law does not require that Dr. Woodruff do so. Instead, Federal Rule of Evidence 703 states that "an expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Thus, Defendants' criticism goes to the weight of this testimony, rather than its admissibility.

The Court expresses skepticism as to whether the record provides a sufficiently reliable basis for Woodruff's opinion that J.S. suffered a mild traumatic brain injury. Plaintiffs maintain that Dr. Woodruff relied on several items to form his opinion. First, Dr. Woodruff relied on J.S.'s mother's report of J.S.'s drowsiness immediately following the incident and of altered behavior for a couple months thereafter. Second, Dr. Woodruff's report notes that medical records related to a December 1, 2010, follow up x-ray state, "there is mild bifrontal extra-axial fluid noted in the visualized midline imaging." While Plaintiffs argue that this notation is indicative of mild traumatic brain injury, Dr. Woodruff's report does not explicitly confirm this. Third, Dr. Woodruff's report notes that J.S. had a Glasgow Coma Score of 15. Again, Dr. Woodruff's report does not explicitly confirm that this indicates a mild traumatic brain injury. Rather, Plaintiffs depend on Dr. Igbaseimokumo's deposition to assert that a Glasgow score of 15 is consistent with a mild traumatic brain injury. However, the Court does not find that Dr. Igbaseimokumo's testimony is clear on this point. Instead, he testifies repeatedly that a score of 15 is "normal" and that it "could" indicate a mild traumatic brain injury. (Doc. 68-5, Page 2)

Finally, Plaintiffs assert that "closed head injury," "concussion," and "mild traumatic brain injury" are synonymous terms and used interchangeably. While Dr. Woodruff does use the terms interchangeably in his report, the Court is not convinced that Dr. Woodruff is necessarily using the terms synonymously. Additionally, the Court does not have a deposition of Dr. Woodruff to shed light on this issue. Plaintiffs point to testimony by Dr. Igbaseimokumo's suggesting the terms are synonymous, but Dr. Igbaseimokumo also testifies that the terms are not synonymous. Specifically, he states that a "closed head injury" is "a broad term that could include traumatic brain injury…Because if you had only the scalp abrasion without the skull fracture, that would still probably qualify as a closed head injury." (Doc. 68-5, Page 15)

The Court is not certain that Dr. Woodruff actually would testify that "closed head injury," "concussion," and "mild traumatic brain injury" are synonymous terms. Further, if Dr. Woodruff would not testify that the terms are synonymous, the Court needs clarification as to what his basis for mild traumatic brain injury is. Consequently, a Daubert Hearing must be held to determine these issues.

B. <u>Opinion Regarding Future Concerns with J.S.</u>

Defendants contend that Dr. Woodruff's statement that "[c]hildren with a…mild traumatic brain injury are at increased risk of cognitive and behavioral difficulties…" is unreliable. Because the admissibility of Dr. Woodruff's testimony is pending due to the above-ordered Daubert hearing, the Court will reserve judgment as to whether Dr. Woodruff can opine on the future effects of mild traumatic brain injury.

## III. **Dr. Peter Stavinoha**

Dr. Peter Stavinoha is a neuropsychologist who is licensed as a psychologist in Texas and board certified as a specialist in clinical neuropsychology by the American Board of Clinical Neuropsychology and the American Board of Professional Psychology. Dr. Stavinoha has approximately twenty years of experience in this field. Consequently, the Court finds that Dr. Stavinoha is qualified as an expert in neuropsychology.

Defendants point to *Curtin v. Farmers Insurance Company, Inc.* to suggest that Dr. Stavinoha may not evaluate whether J.S. suffered a mild traumatic brain injury. No. 09-CV-5008, 2010 WL 1268037 (W.D. Mo. Apr. 2, 2010). The *Curtin* court found that a neuropsychologist could not render a medical opinion regarding a mild traumatic brain injury, because a mild traumatic brain injury is a medical diagnosis and a neuropsychologist is not a medical doctor. *Id.* at *7. This Court agrees with the *Curtin* court that Dr. Stavinoha, as a neuropsychologist, may not render a medical opinion as to whether J.S. suffered a mild traumatic brain injury.

Dr. Stavinoha can offer an opinion about J.S.'s future neuropsychological assessment needs but only if he bases those recommendations on a valid medical opinion of J.S.'s medical condition. The Court cannot determine the true extent to which Dr. Stavinoha relied on Dr. Woodruff's opinion of mild traumatic brain injury. Therefore, this issue also will have to be addressed at the Daubert hearing.

## IV. **Conclusion**

For the foregoing reasons, the motion to strike the opinions of Plaintiffs' medical experts is deferred. A Daubert hearing will be held at 9 a.m. on November 4, 2014.

4

IT IS SO ORDERED.

                                                      /s/ <u>Ortrie D. Smith</u>
                                                     ORTRIE D. SMITH, SENIOR JUDGE
DATE: October 2, 2014                      UNITED STATES DISTRICT COURT