IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

JESSICA and JESSIE SIEMS, )
Individually and as next Friends of )
J.S., a Minor )
)
                Plaintiffs, )
)
vs. )   Case No.: 13-0796-CV-W-ODS
)
BUMBO INTERNATIONAL TRUST, )
f/k/a Jonibach Management )
Trust and TARGET CORPORATION, )
)
                Defendants. )

ORDER AND OPINION DENYING DEFENDANTS'
MOTION TO EXCLUDE OPINIONS OF PLAINTIFFS' MEDICAL EXPERTS

      Defendants Bumbo International Trust and Target Corporation move to strike the opinions of Plaintiffs' Medical Experts (Doc. #61). The Motion is denied.

## I. Background

      At issue are two medical expert reports: one rendered by Dr. Brian Woodruff ("Woodruff") and one rendered by Dr. Peter Stavinoha ("Stavinoha"). On October 2, 2014, the Court entered an Order deferring judgment on Defendants' Motion pending a Daubert Hearing (Doc. # 84). On November 4, 2014, the hearing was held to determine the following issues: (1) whether Woodruff would testify that the terms "closed heard injury," "concussion," and "mild traumatic brain injury" are synonymous; (2) if Woodruff would not testify that the aforementioned terms are synonymous, what his basis for mild traumatic brain injury is; and (3) the extent to which Stavinoha relied on Dr. Woodruff's opinion of mild traumatic brain injury.

## II. Legal Standard

The district court must make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology can be applied to the facts at issue." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993). In determining the admissibility of expert testimony, the Eighth Circuit uses a three-part test:

> First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. This is the basic rule of relevancy. Second, the proposed witness must be qualified to assist the finder of fact. Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires.

*Lauzon v. Senco Products, Inc.*, 270 F.3d 681, 686 (8 th Cir. 2001) (internal quotations and citations omitted). The third requirement is based on Federal Rule of Evidence 702, which permits expert opinions at trial if, "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the expert has reliably applied the principles and methods to the facts of the case." Further, in "its attempt to determine whether proffered scientific evidence is scientifically valid, a trial court should ordinarily consider, among other factors, the following: (1) whether the underlying theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether the technique has a known or knowable rate of error; (4) whether the theory or technique is generally accepted in the relevant community." *Jauregui v. Carter Mfg. Co.*, 173 F.3d 1076, 1082 (8th Cir. 1999). "This list of factors is not exclusive, and the trial court is left with great flexibility in adapting its analysis to fit the facts of each case." *Id.*

## III. Dr. Brian Woodruff

The Court determined in its October 2, 2014, Order (Doc. #84) that Woodruff was qualified to testify as an expert in neurology and Woodruff's failure to personally examine J.S. addressed the weight of his testimony, rather than its admissibility. The Court will not further discuss these issues.

2

A.  Opinion Regarding J.S. Suffering a Mild Traumatic Brain Injury

Defendants cite several reasons why Woodruff's opinion that J.S. suffered a mild traumatic brain injury should be excluded. Defendants argue Woodruff's opinion is based on just one report of drowsiness.  However, Woodruff does not rely on a single report of drowsiness to support his opinion.  In his report, Woodruff explicitly states his opinion is "based on data from [J.S.'s] mother's deposition and discharge diagnosis." (Doc. # 61-4, Pg. 3).  At the Daubert hearing, Woodruff testified he primarily relied on three items in forming his opinion: (1) the mechanism of the injury, (2) the discharge diagnosis of "closed head injury," and (3) the mother's reports about J.S.'s behavior.[1]

Woodruff testified that in his understanding and education a diagnosis of "closed head injury" would include mild, moderate and severe traumatic brain injury; and that a closed head injury necessarily includes a traumatic brain injury of some sort.  Woodruff also testified that the specific data from the mother's deposition on which he relied were the mother's reports of J.S.'s drowsiness immediately following the injury and the mother's reports that J.S. was not herself and out of sorts for several months after the injury.  Woodruff stated a report of drowsiness or lethargy is significant because it is a "core" symptom of mild traumatic brain injury.  Woodruff noted a child experiencing drowsiness after a fall is a concerning sign and changes the direction of his "work up." Moreover, Woodruff testified a 2003 CDC report conceptually defines mild traumatic brain injury as blunt trauma to the head that results in irritability and/or lethargy in infants.  Therefore, the Court finds Woodruff has a sufficient basis for his opinion that J.S. suffered a mild traumatic brain injury.

Next, Defendants state, "Woodruff has not sufficiently 'ruled in' a traumatic brain injury as the cause of the drowsiness as compared to other possible explanations for drowsiness."  The Eighth Circuit has "consistently ruled that experts are not required to rule out all possible causes."  *Johnson v. Mead Johnson & Co., LLC*, No. 13-1685, 2014 WL 2535324, at *5 (8th Cir. June 6, 2014).  In *Johnson*, the Eighth Circuit held that

---

[1] In their Reply Brief, Defendants argue Plaintiffs attempt to expand the basis of Woodruff's opinion in contravention of Federal Rule of Civil Procedure 26(a)(2)(B)(i).  However, Woodruff's testimony at the Daubert hearing confirms that, as stated in his report, his opinion is based on information from J.S.'s mother's deposition and on J.S.'s discharge diagnosis.

3

because "[n]o one disputes that Enfamil can be and has been a source of C. Sak," an expert had properly "ruled in" Enfamil as a possible source of the plaintiff's C. Sak. *Id.* Here, no one disputes that drowsiness can and has been a symptom of mild traumatic brain injury. Woodruff has sufficiently "ruled in" a traumatic brain injury as a possible cause of J.S.'s drowsiness.

Finally, Defendants argue Woodruff's opinion should be excluded because J.S. has not experienced any symptoms or concerns related to mild traumatic brain injury since the incident occurred. At the Daubert hearing, Woodruff testified it can be more difficult to determine if young children are having issues related to mild traumatic brain injury because of their inability to communicate. Woodruff further testified that the repertoire of what children can do expands each year as they get older, and thus symptoms of mild traumatic brain injury may not crop up until a child is older.

For the foregoing reasons, the Court finds Woodruff's opinion regarding J.S. suffering a mild traumatic brain injury sufficiently reliable.

### B. Opinion Regarding Future Concerns with J.S.

Defendants contend Dr. Woodruff's statement that "[c]hildren with a…mild traumatic brain injury are at increased risk of cognitive and behavioral difficulties" is unreliable, because Missouri law requires a reasonable certainty of future medical issues. However, this rule of law determines whether a party may recover damages – it does not determine whether a piece of evidence is admissible. In *Lesch v. U.S.*, doctors testified about the plaintiff's future care and treatment needs, even though some of those future medical needs only "may" have been necessary. 612 F.3d 975, 982 (8th Cir. 2010). Additionally, at the Daubert hearing, Woodruff testified that it is a medical certainty that J.S. is at an increased risk for future difficulties.

In any event, Woodruff is reasonably certain J.S. has an increased risk of future concerns and that this increased risk requires certain medical treatment or diagnosis. The increased risk need not equate to a greater than 50% likelihood of the additional effects actually occurring. Consequently, the Court finds Woodruff's opinion regarding future concerns with J.S. sufficiently reliable.

4

## IV.     Dr. Peter Stavinoha

The Court determined in its October 2, 2014, Order (Doc. #84) that Stavinoha was qualified to testify as an expert in neuropsychology but as a neuropsychologist, he could not render a medical opinion as to whether J.S. suffered a mild traumatic brain injury.  No further discussion of these issues is necessary.

Defendants provide several reasons why Stavinoha's opinion regarding the need for future testing of J.S. should be excluded.  First, Defendants maintain Stavinoha's opinion should be excluded because it is based on Woodruff's unreliable diagnosis of mild traumatic brain injury.  As discussed in Section III.A, the Court finds Woodruff's opinion sufficiently reliable.  Additionally, at the Daubert hearing, Stavinoha testified that in his practice as a neuropsychologist, he routinely relies on referrals from neurologists, such as Woodruff's diagnosis.

Next, Defendants argue Stavinoha's opinion should be excluded because he has not met or evaluated J.S.  While Stavinoha may not have met or evaluated J.S., the law does not require him to do so.  Rather, Federal Rule of Evidence 703 states, "an expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed."  Defendants' argument addresses the weight of Stavinoha's testimony, not its admissibility.

Further, Defendants contend Stavinoha's opinion should be excluded because J.S. has not experienced any symptoms or concerns related to mild traumatic brain injury since the incident occurred.  In his report, Stavinoha maintains neurocognitive and neurodevelopment difficulties may not manifest until later in a child's life.  For example, Stavinoha stated in his report and confirmed at the Daubert hearing "that cognitive functions such as executive functions do not mature until well into adolescence." (Doc. #61-5, Pg. 3).

Finally, Defendants assert Stavinoha's opinion should be excluded because he has not established J.S. is reasonably certain to have future neurological issues.  As discussed in Section III.B, the Court finds this argument unpersuasive.

5

For these reasons, the Court will not exclude Stavinoha's opinion that J.S. requires future testing.

## V. Conclusion

For the foregoing reasons, the Motion to Strike the Opinions of Plaintiffs' Medical Experts is denied.

IT IS SO ORDERED.

DATE: November 6, 2013

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT